# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JESSICA D. FORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-09-323-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Jessica D. Ford requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the decision of the Commissioner is REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on April 17, 1979, and she was thirty years old at the time of the administrative hearing (Tr. 36). She has a ninth grade education, earned a GED (Tr. 36) and has worked as a waitress, car hop, receptionist, and secretary (Tr. 29). The claimant alleges that she has been unable to work since May 15, 2005 because of anxiety, depression, and bipolar disorder (Tr. 175).

## Procedural History

The claimant applied on September 24, 2007 for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Richard Kallsnick held an administrative hearing and determined the claimant was not disabled in a written opinion dated May 29, 2009. The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the physical ability to perform the full range of medium work as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c) (Tr. 25). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled

because there were jobs she could perform in the national economy, *i. e.*, kitchen helper, hand packager, assembly work, and miscellaneous labor work.

## Review

The claimant contends that the ALJ erred in his analysis of claimant's treating physician Dr. Jeanne McCance. The undersigned Magistrate Judge finds that the ALJ *did* err in his treatment of claimant's treating physician opinion.

The claimant has been receiving treatment for her mental health issues since June 1999. Dr. Madhu Koduri noted at that time that claimant was "[s]till having intermittent anxiety attacks" but was "more optimistic in terms of looking forward to starting her vocational training" (Tr. 268). One month later, Dr. Koduri noted that claimant "continues to have a day to day crisis situation" and that she had [s]ome worsening of the depression with anxiety attacks" (Tr. 268).

In September 1999, the claimant started receiving mental health treatment from Dr. Dennis K. Trost. His notes reflect that claimant varied considerably in her complaints, at times reporting going "downhill" and dealing with irritability (Tr. 267), and other times reporting that she was doing "excellent" (Tr. 259). Dr. Trost's notes reflect that the claimant visited his office approximately once a month, and she received treatment from Dr. Trost until 2004, when she began treatment with Dr. Jeanne McCance.

On May 25, 2005, claimant reported feeling lightheaded, tearful, and emotionally out of control, with crying spells and lots of family stress (Tr. 250). The claimant was

prescribed Xanax, Seroquil, and Wellbutrin (Tr. 250). Three months later, Dr. McCance noted that claimant was smiling with a happy affect and that claimant's energy level was good (Tr. 249). Just a couple months after that, in October 2005, the claimant reported feeling lonely with increased social anxiety, and Dr. McCance questioned whether her agoraphobia was worsening (Tr. 247). In February 2007, Dr. McCance noted that claimant had not been on her medications "for months" and was "doing terrible, tearful, anxious" and suffering with insomnia (Tr. 243). The claimant was feeling distracted and "nervous all the time," experiencing crying spells or feelings of numbness, and reported that she "wants to lay in bed for 6 [months]" in June 2007 (Tr. 242). Three months later, claimant reported having a nervous breakdown in August, which caused her to stay in bed for seven days (Tr. 241). In October 2007, the claimant reported feeling 100% better and being able to go to Walmart (Tr. 228). The claimant then reported "doing pretty good" but having a problem with getting out and seeing people because of her paranoia one month after that (Tr. 227). The claimant reported feeling fatigued, causing her to stay in her pajamas and take three naps per day, feeling grouchy and irritable, and being able to sleep through anything in February 2008 (Tr. 226). Dr. McCance wrote that claimant was on a "roller coaster ride" in June 2008 (Tr. 224).

On July 19, 2008, Dr. McCance completed a Mental Medical Source Statement, in which she opined that claimant suffered moderate limitations in the following areas: 1) ability to understand and remember detailed instructions; 2) ability to carry out detailed instructions; 3) ability to perform activities within a schedule, maintain regular

-5-

attendance, and be punctual within customary tolerances; 4) ability to maintain attention and concentration for extended periods; 5) ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; 6) ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; 7) ability to respond appropriately to changes in the work setting; and 8) ability to sustain an ordinary routing without special supervision (Tr. 220-22). In addition, Dr. McCance noted that claimant "can get easily irritated with [increased] stress," "people bother her [and] she has little tolerance," and stated that claimant needed to avoid "stress [and] the public" (Tr. 222).

State agency physician Dr. Cynthia Kampschaefer completed a psychiatric review technique (PRT) form, noting the claimant suffered from affective disorders, specifically, "[b]ipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes)" (Tr. 204). Dr. Kampschaefer opined that the claimant suffered from moderate limitations in the areas of activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace, and that claimant has had one-two episodes of decompensation (Tr. 211).

An ALJ must evaluate and assign specific weight to any medical opinion in the claimant's record. *See Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate every medical opinion in the record, *see* 20 C.F.R. §[§] 404.1527(d),

[416.927(d)], although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion."), *citing Goatcher v. Department of Health & Human Services,* 52 F.3d 288, 290 (10th Cir. 1995). Further, an opinion from a treating physician such as Dr. McCance is entitled to controlling weight if "the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record." *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). The ALJ here did not specify the weight he was assigning to either of the opinions he received from Dr. Kampschaefer and Dr. McCance, although he claimed to have considered the limitations found by Dr. Kampschaefer "and included the same in the above RFC." (Tr. 28). The ALJ offered no explanation for apparently favoring the opinion of a non-examining consultant over that of a treating physician.

Second, because he seemingly relied on the opinion of non-examining state physician Dr. Kampschaefer over that of claimant's treating physician Dr. McCance, the ALJ was therefore required to explain the weight he was assigning to Dr. Kampschaefer's opinion. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Thus, the ALJ erred in rejecting the treating-physician

opinion of Dr. Baca in favor of the non-examining, consulting-physician opinion of Dr. Walker absent a legally sufficient explanation for doing so."), *citing* 20 C.F.R. §§ 404.1527(d)(1), (2) & 416.927(1), (2); Soc. Sec. R. 96-6p, 1996 WL 374180, at *2. *See also Hamlin*, 365 F.3d at 1223 ("If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it."), *citing* 20 C.F.R. § 404.1527(f)(2)(ii), 416.927(f)(2)(ii).

Because the ALJ failed to properly evaluate the medical opinions of Dr. McCance and Dr. Kampschaefer in accordance with the applicable authorities, the Commissioner's decision must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustments to the claimant's RFC on remand, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 31st day of March, 2011.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma